[No. 2077, April 8, 1918.]
## ELLIOTT v. RICH.

### SYLLABUS BY THE COURT.

1. Upon the allowance of a lieu selection of public land by the local land officers, the state and its lessee acquire such an interest in the land as authorizes injunction to prevent waste thereon.  P. 55

2. Notwithstanding the title to land covered by lieu selection by the state is in litigation before the Land Department

of the government, the state, and through it its lessee, may maintain an injunction to prevent waste pending a final determination of the rights of the parties by the Land Department. P. 55

Appeal from District Court, Roosevelt County; McClure, Judge.

Suit by William Elliott against Everett Rich. Decree for defendant, and plaintiff appeals, Reversed and remanded, with directions.

KEITH EDWARDS, of Ft. Sumner, and G. L. REESE, of Portales, for appellant.

J. E. PARDUE, of Ft. Sumner, for appellee.

### OPINION OF THE COURT.

PARKER, J. The appellant filed his complaint in the district court of Roosevelt county against the appellee, alleging that the appellant was the lessee of certain lands from the state of New Mexico; that the appellee on a day certain and at divers other times entered upon and broke and plowed up the soil of a portion of said premises; that said premises were valuable for grazing purposes, and were leased by the appellant for said purposes only; that said breaking and plowing of the soil completely destroyed the grass on said premises and irreparably injured it for grazing purposes; that the appellee was about to commit further trespass of a similar nature; and prayed for an injunction against any further trespass or injuries to the said premises. Afterwards an amended complaint was filed, adding the further allegation that the state of New Mexico, the lessor of appellant, had filed application in the United States land office at Ft. Sumner, N. M., for the selection, as indemnity lieu lands, of the said lands, and that on the 5th day of April, 1915, the said selections were duly allowed by the officers of the said land office. The appellee answered the amended complaint, denying

that the said selections were allowed by the officers of the said land office and the lands segregated from all form of entry. He admitted that he plowed up the land, but alleged that he did so in pursuance of his right as a bona fide settler upon the said land, alleging settlement made prior to the selection by the state and continued to the date of the answer. He also admitted that the lands were valuable for grazing purposes, and that the breaking up and plowing of the same completely destroyed the grass and injured the land for grazing purposes, but he denied that he plowed any lands except those embraced within his alleged homestead settlement. By way of new matter, appellee further alleged in his answer that the state of New Mexico had no interest in and to the lands at the time of the purported lease to the appellant; that appellee was a prior settler; that he had an application pending in the Department of the Interior to enter the land as a homestead; that the selection of the state was not filed until after his settlement had been initiated; that the selection had not been approved by the Secretary of the Interior, and until such approval the state had no interest in the lands subject to lease. A reply was filed by the appellant denying each and every allegation contained in the answer.

Upon final hearing, the court made findings of fact and conclusions of law to the following effect: That the appellee had settled upon and was occupying, and with his family was residing upon and occupying, the land in question as a homestead at the time the state of New Mexico filed its selection of said land under the provisions of the Enabling Act, which said land he has at all times claimed as a settler and homesteader since the date of said settlement. The court found that the appellant's right and title and interest in and to the premises in question was extremely doubtful and uncertain, and so extremely doubtful and uncertain that the court deemed it insufficient to entitle the appellant to permanent injunctive relief, and thereupon dissolved

the preliminary injunction theretofore issued. A decree was entered accordingly, from which appellant appeals.

It appears in the testimony that the state filed its lieu selection list covering the lands in controversy on the 23d day of October, 1914, which selection was allowed by the local land office. On the following day, October 24, 1914, the appellee filed a homestead application in the same land office covering the land in controversy. This application was rejected by the local land office on the same day that the lieu selection by the state was allowed. Afterwards the appellee filed a contest against the state's selection, which contest was undisposed of at the time of the hearing before the court. It further appears that the appellee plowed up and broke out some 20 acres of the land involved, and threatened to continue said plowing and breaking, and that the premises were valuable chiefly for grazing and were leased by the appellant for that purpose, and that the plowing of the soil completely destroyed the grass thereon and irreparably injured it for grazing purposes.

[1] The proposition advanced by appellee that the state had no power to lease the lands in question until after the approval by the Secretary of the Interior is disposed of by our recent holding in the case of Makemson v. Dillon et al., 171 Pac. 673 (not yet officially reported), in which we held that, upon the approval by the local land office of a lieu selection by the state, the state acquired such an interest in the land as entitled it to lease the same, and that the lessee might maintain an injunction to prevent trespasses thereon.

[2] The court evidently fell into error in refusing the injunction in this case. It based its judgment upon the fact that there was a contest pending in the land office touching the respective rights of the parties, and that therefore the rights of appellant were too uncertain to warrant injunction. But this fact furnished no basis for denying the relief sought. The state had secured an allowance of its selection prior to the initia-

tion in the land office of any claim on the part of appellee. Until the appellee had secured favorable action by the Land Department and a cancellation of the selection by the state, he had no such right in the premises as would entitle him to plow up the land and destroy the grasses thereon to the detriment of the appellant. It was within the power and it was the duty of the court, under the circumstances, to preserve the estate until final disposition of the rights of the respective parties had been made by the Land Department of the government.

Thus in Olive Land & Development Co. v. Olmstead et al. (C. C.) 103 Fed. 568, the owner of patented land within a forest reserve, under the act of Congress of June 4, 1897, c. 2, 30 Stat. 11, 35, 36 (U. S. Comp. St. 1916, §§ 5126-5134), surrendered his land to the government and made a selection of lieu land as provided for in said act. Subsequently certain persons made a placer location upon the land embraced within the lieu selection upon the theory that it was mineral land, and contained petroleum in commercial quantities, and gave out and proposed that they would sink wells and extract the petroleum from said land. The owners of the lieu selection brought suit for an injunction against the owners of the placer location, and their suit was maintained by the court upon the theory that, notwithstanding the question of the ultimate title to the 'land was pending in the Land Department, nevertheless the plaintiff was entitled to injunctive relief to preserve the estate from waste, pending final action by the Land Department. Many cases are cited and quoted from the Supreme Court of the United States announcing the more modern doctrine that the mere fact that the ultimate title or right is in litigation in no way militates against the right to injunctive relief to protect the estate from waste pending the determination of the rights of the parties.

In Northern Pacific Ry. Co. v. Soderberg (C. C.) 86 Fed. 49, an injunction was granted to prevent the min-

ing of building stone upon lands within the place lim-
its of the grant to the Northern Pacific Railroad, pend-
ing the determination of the mineral or non-mineral
character of the land by the Land Department of the
government, although the lands at the time were un-
surveyed.

In Humbird v. Avery (C. C.) 110 Fed. 465, the Cir-
cuit Court for the District of Minnesota refused an in-
junction for the reason that the damage had already
been done, in that the timber upon the land had been
already cut off; but the court recognizes the right and
duty to preserve the estate by injunction pending the
decision of the rights of the parties by the Land De-
partment of the government.

In Wallula Pacific Ry. Co. v. Portland & S. Ry. Co.
(C. C.) 154 Fed. 902, there was a contest between two
railroad companies as to a right of way, and one brought
a bill for injunction against the other to prohibit it
from trespassing upon the right of way. The relief
was denied in that case for the reason that the build-
ing of a railroad upon the right of way did not consti-
tute waste, and there were no allegations in the com-
plaint bringing the plaintiff within the rule. The rule,
however, that injunction will lie to prevent waste pend-
ing the decision of the right to land by the Land De-
partment of the government is recognized.

In Cosmos Co. v. Gray Eagle Co., 190 U. S. 315, 24
Sup. Ct. 860, 47 L. Ed. 1064, the same principle was
recognized, although in that case the relief was denied,
the court saying:

"The bill is not based upon any alleged power of the
court to prevent the taking out of mineral from the land,
pending the decision of the Land Department upon the
rights of the complainant, and the court has not been asked
by any averments in the bill or any prayer for relief to con-
sider that question."

In an earlier case (Erhart v. Boaro, 113 U. S. 538,
5 Sup. Ct. 566, 28 L. Ed. 1116) is to be found a state-
ment of the position of the Supreme Court of the Unit-

ed States that the former equitable doctrine that a party should be left to his remedy at law in regard to the possession of real estate had been greatly modified in modern times, so that the equitable jurisdiction now exists to prevent waste, notwithstanding the title to the premises be in litigation.

Many other federal and state cases might be cited, but the above would seem to be sufficient.

It appears, therefore, as has been heretofore stated, that it was the duty of the court to preserve the estate in controversy from waste, pending a decision of the rights of the respective parties by the Land Department of the government. The state had acquired such an interest by the allowance of the selection, and the appellant under the lease by the state to him, that injunction as prayed in the complaint was a proper remedy. The state's entry had been allowed, and the appellee's entry had been disallowed and his contest of the state's selection was pending in the Land Department. The right to the ultimate title to the land was in litigation before that department. Pending the determination of that litigation, a court of equity should preserve the estate from waste.

The judgment of the court below will therefore be reversed, and the cause remanded, with directions to award an injunction against the appellee as prayed by the appellant, with the provision, however, to the effect that should the Land Department of the government at any time, prior to the clear listing of the land to the state, determine that the land was not subject to such selection on account of the prior settlement and rights of the appellee, the operation of the decree will thereupon cease, and it is so ordered.

HANNA, C. J., and ROBERTS, J., concur.