FRANK DOMANICK and Others, Plaintiffs, *v.* TRIBORO COACH CORPORATION and JAMES V. McDERMOTT, as President of Amalgamated Association of Street, Electric Railway and Motor Coach Employees of America, Local Division 1104, Defendants. (Action No. 2.)*

Supreme Court, Special Term, New York County, March 25, 1940.

*Harry Sacher*, for the plaintiffs.

*Samuel Seabury*, for the defendant Triboro Coach Corporation.

*Charlton Ogburn*, for the defendant James V. McDermott, as president, etc.

* Revd., 259 App. Div. 657.

HOFSTADTER, J. The complaint is assailed on the ground that it does not state facts sufficient to constitute a cause of action.

The allegations of the complaint, conceded to be true for the purposes of this motion, set forth a specific and clear violation by the defendants of the plaintiffs' rights, arising, in brief, as follows: In anticipation of an election ordered by the State Labor Relations Board — and subsequently held, in which the Transport Workers' Union of America was designated by a vote of 169 against 79 employees of the Triboro Coach Corporation as the exclusive bargaining agency for the plaintiffs — the defendants concluded a contract with the Amalgamated Association of Street, Electric Railway and Motor Coach Employees of America, Local Division 1104, by the terms of which the plaintiffs are required to become members of said Local 1104 or, in the alternative, be discharged from their employment. It is further alleged that a complaint has issued against the defendants by the State Labor Relations Board with respect to this unfair labor practice and that more than six months will elapse before a determination by that tribunal can be had on the merits of this complaint. In the interim, unless relief can be had in this court, the plaintiffs must either lose their jobs or forfeit their right to collective bargaining by representatives of their own choosing by joining the defendant Local 1104. The relief prayed for is that the defendants be stayed, pending the proceeding before the Labor Board, from requiring the plaintiffs, as a condition of their continued employment, to become members of Local 1104. The defendants contend that under the State Labor Relations Act exclusive authority to protect the plaintiffs' right to collective bargaining is vested in the State Labor Relations Board and that this court is without authority to restrain unfair labor practices except on review of final orders of the Board.

There can be no doubt that the authority of the Labor Board to deal with unfair labor practices is exclusive and that the court is without jurisdiction to *interfere* with the action of the Board or to *review* any of its *intermediate* orders (*Matter of Wallach's, Inc.*, v. *Boland*, 277 N. Y. 345); nor was anything more implied by this court's holding in *Matter of Bank of Yorktown* (N. Y. L. J. Sept. 17, 1938, p. 706). In does *not* follow that this court is without power to act in *aid* of a proceeding before the Labor Board for the purpose of *assuring* the effectiveness of its *ultimate* decree. The rights of the plaintiffs might be lost through sheer lapse of time and the statute creating these rights could be rendered nugatory by events occurring while the investigation of the Labor Board is being carried on. Such a result would violate the spirit of the Labor Relations Act itself (Labor Law, §§ 700–716), which broadly declares (§ 700) that in the interpretation of the act the public

policy of the State is to encourage the practice and procedure of collective bargaining, and that "all the provisions of this article shall be liberally construed for the accomplishment of this purpose." I cannot acquiesce in the defendants' contention, therefore, which would deny to this court jurisdiction in aid of the proceeding before the Labor Board in order to preserve the conditions under which its orders may be ultimately effective. Such a conclusion — destructive of rights created by statute and enunciated in the Constitution — has no support in principle or authority.

It is an ancient and well-recognized province of equity jurisdiction to give *ancillary* aid to an action or proceeding in another forum whenever necessary to preserve an existing status of rights in property until the proper disposition thereof has been made in a litigation then pending in such other forum — provided that irreparable damage may result if the existing status is not so preserved. (*Erhardt* v. *Boare*, 113 U. S. 537; *Montana State Federation of Labor* v. *School District No. 1*, 7 F. Supp. 82; *Survel Realty Corp.* v. *Brooklyn Edison Co.*, 139 Misc. 113; *Railway Employees' Co-op. Assn.* v. *Atlanta, B. & C. R. Co.*, 22 F. Supp. 510.)

The Constitution of the State of New York (Art. 1, § 17) provides that "employees shall have the right to organize and to bargain collectively through representatives of their own choosing." The same right is granted to labor by the Labor Relations Act (Labor Law, § 703). The act further prohibits an employer from requiring an employee, as a condition of employment, to join any company union or to refrain from joining or assisting a labor organization of his own choosing. The rights created by the Constitution and by the statute exist independently of the machinery set up by the statute for their enforcement. There is not the slightest indication that it was intended that the Labor Board and the courts should exercise at all times mutually exclusive jurisdiction; on the contrary, it may be readily seen that they complement each other. And it is inadmissible that rights so significant and so solemnized should be beyond the pale of equity's protection — when equitable intervention is consistent with other or more definitive relief. "Why should not a statute right," asks Chief Justice KENT, "be equally sacred, and entitled to equal protection as a common law right? Is not a right of property granted by the Legislature, for meritorious services, equally valid, as if derived by inheritance?" (*Livingston* v. *Van Ingen*, 9 Johns. 507, 536.) And in *Thompson* v. *The New York and Harlem R. R. Co.*, 3 Sandf. Ch. 625, 653) the vice-chancellor, quoting the opinion of KENT, holds "that the parties in possession of an exclusive right or privilege granted by a statute,

are entitled to an injunction to restrain others from infringing that right, although the statute imposed various forfeitures on persons so offending." (See, also, *Tyack* v. *Bromley*, 4 Edw. Ch. 258, 272.)

The defendants argue further that even if this court could take jurisdiction, in a proper case, to restrain the defendants from interfering with the *status quo*, it could not do so in this case because, as they say, the complaint does not allege facts upon which relief can be granted, since no *irreparable* injury will be done to the plaintiffs. I do not so view the matter. It has long been established as the law that the right to collective bargaining by representatives of their own choosing is a *right of property*. " If it could be said that it was necessary in the present instance to show a *property* interest in the employees in order to justify the court in granting an injunction, we are of the opinion that *there was such an interest*, with respect to the selection of representatives to confer with the employer in relation to contracts of service, as satisfied the statutory requirement." (Italics supplied.) (Chief Justice Hughes writing in *Texas & N. O. R. R. Co.* v. *Brotherhood R. & S. S. Clerks*, 281 U. S. 548, 571.)

We can readily perceive the results that might follow the coercion of the plaintiffs to join Local 1104. The continued existence of the agency selected by a great majority of the employees would thus be threatened and the free choice of the plaintiffs to bargain collectively through representatives of their own choosing might well be forfeited. Of necessity, the very proceeding now pending before the Labor Board might be affected adversely to the interests of the plaintiffs. For the right is a *continuing* one, which from its very nature requires *uninterrupted* exercise to assure its ·potency. And, therefore, suspending it for an indefinite period of time under coercive restraint may prove to be no mere postponement, but a disruption, with resultant disintegration. Nor can it be said that the alternative granted to the plaintiffs, to refrain from joining Local 1104, and subject themselves to being discharged from their employment, is a real one. Aside from the disability which they will then be under in being unable to obtain other employment, as the complaint alleges, the interest that they have in the job itself, the skill, the training and experience which it affords, are rights which cannot be lightly disregarded, and which a court of equity might very well in its discretion seek to preserve pending the determination of this conflict· in the appropriate tribunal. And in *Montana State Federation of Labor* v. *School District No. 1* (*supra*) it was held that in such a situation " a court of equity may and should almost of course issue any injunction or exact an equivalent reasonably necessary to preserve the *status quo,* to protect

property or rights, and to ensure the fruits of the probable decision or judgment." (See, also, *Railway Employees' Co-op. Assn.* v. *Atlanta, B. & C. R. Co., supra.*)

No cogent consideration appears why equity should shrink from exercising such jurisdiction in these premises. I conceive that to deny relief here on a proper showing made would not be the salutary exercise of judicial self-limitation, but rather a species of self-repudiation. The freedom of the power of collective bargaining would, in the words of Chief Justice HUGHES, be " a mockery if representation were made futile by interference with freedom of. choice." (*National Labor Relations Board* v. *Jones & Laughlin S. Corp.*, 301 U. S. 1, 34.) The instant complaint sets forth a state of facts which constitute a groundless and unjustified interference by the defendants with this fundamental right and evokes the exercise of its jurisdiction by this court.

The defendants also assert that the complaint must be dismissed because of a judgment dismissing a prior complaint in a prior action between the parties, which, it is asserted, is *res adjudicata* of the issues before this court. However, an examination of the complaint in the former action and of the decision of Mr. Justice VALENTE dismissing the same (*Domanic* v. *Triboro Coach Corp.*, N. Y. L. J. Feb. 14, 1940, p. 701), demonstrates that the issues before the court in that case are entirely different from those raised there. There the plaintiff was seeking a temporary injunction, as a preliminary step in a plenary action for a permanent injunction, to restrain the defendants from continuing an unfair labor practice, and the court properly pointed out that the tribunal to which its complaint should be addressed is the State Labor Relations Board. This is merely an ancillary action, pending action by the Board. Justice VALENTE recognized, however, that " it may be that exceptional situations may arise, where, even during the progress of the controversy before the Board, a situation for application for temporary injunctive relief might be justified either on the part of the employee or the employer." Upon the allegations of the complaint, the present action constitutes an instance of such exceptional circumstances.

And in the presence of such considerations this court is not constrained to remain inert. For a new need we adopt an ancient remedy. Unprepossessed, we view innovations with objectivity. But if, in exercising traditional powers, we seem to mitigate the strains and stresses of a changing economy, we merely manifest that capacity for growth which inheres in the nature of the judicial process.

Motion denied.